IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ISIDRO MADRID, LYDIA
RIVAS-GUADERRAMA,
GLORIA LOYA and**
all others similarly situated,

        **Plaintiffs,**

vs.                                           No. CIV 02-1648 RB/LAM

**LES BROWNLEE, Acting Secretary
Department of the United States Army,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion to Dismiss First Amended Complaint (Doc. 14), filed on May 9, 2003. Jurisdiction arises under 28 U.S.C. § 1331. Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion is well-taken and should be granted.

**I.**     **Background.**

Plaintiffs are current and former Hispanic civilian employees at the Army's White Sands Missile Range (WSMR). They allege national origin employment discrimination with respect to promotions and promotional opportunities on behalf of themselves and others similarly situated.[1] (First Am. Compl. ¶ 9.) The First Amended Complaint summarizes the careers of Madrid, Rivas, and ten other Hispanic employees at WSMR. (*Id.* ¶¶ 33-126.) Madrid was hired as an Accounting

---

[1] Plaintiffs cite to 42 U.S.C. § 1983, as well as Title VII, as a legal basis for their claim. However, Section 1983 is inapplicable for lack of state action. Nowhere do Plaintiffs mention *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Technician, GS-05 at WSMR in 1971. He later worked in Classification and Employee Development at Holloman Air Force Base, where he was promoted to GS-11. In 1978, Madrid laterally transferred to WSMR at GS-11. In 1987, he was promoted to GS-12 and has been a Classification Specialist at that grade ever since.

Rivas was hired at WSMR as a Clerk Typist, GS-03 in 1975. From 1978 to 1981, she worked as a Clerk Typist for the USDA. In 1981, Rivas returned to WSMR as a Personnel Clerk. In 1982, she transferred to an installation in Huntsville, Alabama and trained as a Security Specialist Intern. She returned to WSMR as a Security Specialist, GS-11 in October 1983. In 1995, Rivas filed a Title VII action against Defendant in this Court. Judge Bratton granted summary judgment to Defendant in February 1998. As of October 1996, Rivas was on administrative leave from WSMR.

Although her career is not summarized in the First Amended Complaint, the record indicates that in 1994 Loya filed a union grievance regarding the denial of her promotion to GS-12. (Def. Ex. 34.) As of October 1996, Ms. Loya was employed at WSMR as a GS-11, Computer Specialist. (Def. Ex. 10.)

Two administrative charges are relevant to this case: (1) Madrid's individual national origin discrimination and retaliation charge based on his January 11, 1996 performance appraisal informally submitted on January 25, 1996 and formally filed on March 22, 1996 (individual charge); and (2) Plaintiffs' class action national origin discrimination charge informally submitted on October 24, 1996 and formally filed on April 5, 1997 (class action charge). (Def. Exs. 1; 4; 10; and 16.)

Madrid initiated his individual charge on January 25, 1996. (Def. Ex. 1.) Pursuant to agency regulations, Madrid discussed his claim with an EEO counselor who advised him of his rights and responsibilities. (Def. Ex. 2.) On March 27, 1996, Sandra Nail, a WSMR EEO Counselor, issued

a report describing the counseling she had conducted with Madrid. (Def. Ex. 3.) As grounds for the individual claim, Madrid alleged that on January 11, 1996, his supervisors, Samuel Dodson and Marion Barrick, gave him a lower performance evaluation than they gave his co-workers and that they reversed his management advisories to make him look bad. (Def. Ex. 4.) In an addendum dated May 6, 1996, Madrid wrote that he received a lower cash award than all the other specialists in his division. (Def. Ex. 4.) Defendant's Office of Complaint Investigations conducted an administrative investigation of the individual charge on June 27, 1996, and issued an investigative report on September 17, 1996 (OCI report). (Def. Ex. 8.)

The OCI report found no basis for Madrid's allegations of discrimination or retaliation. (Def. Ex. 8.) On October 22, 1996, Madrid requested a hearing before an EEOC Administrative Law Judge (ALJ) on the individual charge. (Def. Ex. 9.) After holding a hearing on March 17, 1997, the ALJ found that Madrid failed to prove that Defendant discriminated or retaliated against him. (Def. Ex. 17.) On May 16, 1997, Madrid appealed the denial of his individual charge to the EEOC. (Def. Ex. 19.) On January 15, 1999, the EEOC affirmed Defendant's denial of Madrid's individual charge. (Def. Ex. 31.)

On October 24, 1996, Madrid, Loya, Rivas and Anna Marie Cardon[2] submitted the class action charge in the form of a letter asserting national origin discrimination on behalf of themselves and other past and present Hispanic employees at WSMR. (Def. Ex. 10.) Plaintiffs alleged that Hispanic employees at WSMR were denied promotion opportunities, received unjustifiably low performance appraisals, and were subjected to inequities in performance awards. (*Id.*) Plaintiffs attached a list of WSMR employees who wished to be included in the class. (*Id.*) Six of the

---

[2] Ms. Cardon is not mentioned in the First Amended Complaint.

employees requested that their names be removed from the list. (Def. Ex. 15.) Plaintiffs specified that the alleged discrimination occurred on September 17, 1996, the date that Madrid received the OCI report. (Def. Exs. 10, 14.)

On January 14, 1997, Frances Williams, WSMR EEO Counselor met with Madrid and his non-attorney representative. (Def. Ex. 14.) Madrid stated that he filed the class action charge after he learned that his individual charge was denied. (*Id.*) Williams explained that the class action charge could be dismissed if it raised an issue that was pending before, or had been decided by, the agency or the EEOC. (*Id.*) She also explained the requirements for a class action charge. (*Id.*) At the meeting, Madrid stated that he wanted to withdraw the class action charge, but changed his mind a few days later. (Def. Ex. 14.) Madrid admitted that his last promotion was to a GS-12 in November 1987, and that he had not applied for any permanent promotions since that date because none had been available. (*Id.*)

On January 24, 1997, Williams met with Madrid, Rivas and the non-attorney representative. (Def. Ex. 14.) Rivas explained that she had been on leave without pay since August 1995, she had not applied for any positions since that time, and she had a lawsuit pending before the United States District Court. (*Id.*) On March 4, 1997, Williams issued a report of counseling. (*Id.*)

On March 18, 1997, Madrid filed a formal administrative complaint on the class action charge and listed the date of the most recent discrimination as September 17, 1996. (Def. Ex. 16.) He requested that Defendant "[s]top immediate discrimination against Hispanics, reperation [sic] - compensation to make all Hispanics whole (equal) to the Whites at WSMR, NM for the past 30 years, in terms of promotions, performance appraisals, and performance awards." (*Id.*) In the explanation section of the form, Madrid wrote:

4

> I became aware of how I was discriminated against by Mr. Dodson (Caucasian) and Mr. Barrick (Caucasian), when I received my OCI transcript. I was made aware by other Hispanics that it was common practice among upper-level Caucasian managers to discriminate against Hispanics. Hispanics were discriminated against in promotions, performance appraisals, monitory (sic) awards, and quality step increases. Mr. Dodson and Mr. Barrick misused the system by awarding Mr. Porras (Hispanic) an over-all evaluation of 1 and a performance award of $1025.00. I received an over-all evaluation of 2 and no performance award, implying that they are not prejudice [sic] . . . . Everyone received an over-all performance rating of 1 and a performance award of $1025.00 except me. Everyone received an excellence over 50% on there [sic] objective ratings except me. The above facts establishes [sic] pretext and disparate treatment.

On April 19, 1997, Madrid requested a hearing before an EEOC ALJ on the class action charge. (Def. Ex. 18.) On August 20, 1997, Madrid submitted a letter in response to Williams' March 4, 1997 counseling report. (Def. Ex. 21.) On September 2, 1997, the ALJ requested that Madrid specify what policies, practices or actions were alleged to be discriminatory, state in what way Madrid was discriminated against by Dodson and Barrick, explain the reference to the OCI transcript, and state whether or not the allegations were discussed with an EEO counselor, and if not, why not. (Def. Ex. 23.)

On September 19, 1997, Madrid responded that Hispanics received unwarranted discriminatory treatment and identified the specific discrimination by Dodson and Barrick as his January 1996 performance appraisal, denial of the $1025.00 cash award, and advisory reversals. (Def. Ex. 24.) Madrid stated that he had raised these matters with Sandra Nail, the EEO Counselor assigned to his individual charge. (*Id*.)

On November 5, 1997, the ALJ recommended that the class complaint be dismissed because

it failed to meet the numerosity requirement of the regulations and that the agency resume processing Madrid's individual complaint. (Def. Ex. 26.) On November 10, 1997, Defendant adopted the ALJ's recommendation and dismissed the class action charge for failure to meet the numerosity requirement. (Def. Ex. 27.) On December 22 1997, Madrid appealed to the EEOC Office of Federal Operations. (Def. Ex. 28.) Madrid maintained that the numerosity requirement had been met because his class action charge included a list of approximately 100 signatures of Hispanics and that 47% of the 3000 WSMR employees were Hispanic and that they also wanted to be included. (Def. Ex. 30.)

On July 17, 2001, the Office of Federal Operations conditionally certified the class for additional processing. (Def. Ex. 33.) Eligible class members include current Hispanic WSMR employees who applied for, but did not receive, promotions or who were denied opportunities to receive promotions that White individuals were granted. (*Id*.) Certification was conditioned on Madrid securing adequate counsel. (*Id*.) The Office of Federal Operations remanded the matter to Defendant and ordered him to forward a copy of the class complaint file to the Phoenix EEOC District Office and request that an ALJ be appointed to process the conditionally certified class and to determine the adequacy of any attorney retained by Madrid to represent the class. (*Id*.) The Phoenix EEOC District Office has taken no further action. (First Am. Compl. ¶ 23.)

## II.     Summary of Pending Arguments.

Defendant argues that the Rule 12(b)(1) standard applies; Madrid's individual claim is barred because he did not file suit in district court within ninety days after the final agency decision; the class action charge is barred because it was not brought within forty-five days after an adverse employment action; Rivas and Loya failed to exhaust administrative remedies; Plaintiffs' individual claims are

barred by res judicata; and the allegations concerning the Resumix system are unexhausted.

Plaintiffs respond that the summary judgment standard applies; the instant suit is based on the class action charge; the EEOC investigation failed to determine whether Plaintiffs were denied promotional opportunities during the pertinent time period; Madrid became aware of the long-standing discrimination when he received the OCI report on September 17, 1996; Plaintiffs actively sought employment and reviewed applicable job announcements during the applicable time period; Plaintiffs are not raising the issues raised in Rivas' prior lawsuit and Loya's union grievance; and the Resumix system is within the scope of the class complaint because it came into use on January 24, 2000 and Plaintiffs are on system.

Defendant replies that Plaintiffs failed to identify an adverse employment action that occurred within forty-five days of the date on which they brought the class action charge and Plaintiffs failed to raise claims about the Resumix system in their administrative proceedings.

### III.  Analysis.

#### A.  The standard for decision.

Defendant advocates for application of Rule 12(b)(1). When a party challenges the allegations supporting subject-matter jurisdiction, the court may refer to evidence outside the pleadings without converting the motion to dismiss to a motion for summary judgment. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995); FED. R. CIV. P. 12(b)(1). A complete failure to file an administrative charge is a jurisdictional bar to suit under Title VII. *See Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). However, the Tenth Circuit draws a distinction between a failure to file an administrative charge at all, which is jurisdictional, and a failure to timely file an administrative

charge, which is not jurisdictional. *Sizova v. Nat. Inst. of Standards & Tech.* 282 F.3d 1320, 1324-26 (10th Cir. 2002) (citing *Jones*, 91 F.3d at 1399 n.1). Defendant argues that the class action administrative charge was untimely. Because subject matter jurisdiction does not depend on the resolution of this issue, Rule12(b)(1) is inapplicable and the analysis defaults to Rule 12(b)(6).

When matters outside the pleadings are presented and considered by the court, the motion must be treated as a motion for summary judgment. *See* FED. R. CIV. P. 12(b). Before the motion is converted to a summary judgment motion, all parties must be given a reasonable opportunity to present all material made pertinent by Rule 56. *Id.*; *see also* FED. R. CIV. P. 56. Plaintiffs presented their response under the Rule 56 standard with supporting materials. Although Defendant objected to application of the Rule 56 standard in its reply, he did not seek to submit additional materials and argued in his reply that Plaintiffs failed to raise any genuine issues of material fact. Under these circumstances, the parties had a reasonable opportunity to present all pertinent material. The motion should be treated as a motion for summary judgment.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*.

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken

as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).  The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter.  *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof.  *See Muñoz,* 221 F.3d at 1164.  It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion.  *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).  The substantive law at issue determines which facts are material in a given case.  *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*   The district court may only consider admissible evidence submitted to defeat summary judgment.  *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n.1

(10th Cir. 2000).

### B. Whether Madrid exhausted administrative remedies with respect to his individual charge that was submitted to the agency on January 25, 1996.

A complainant who has filed an individual charge against a federal agency under Title VII is authorized to file a civil action in an appropriate United States District Court within ninety days of receipt of the Commission's final decision on an appeal. 42 U.S.C. § 2000e-16(c); 29 C.F.R.§ 1614.408(c) (1999). The final agency decision on Madrid's individual charge was issued on January 15, 1999. (Def. Ex. 31.) This action was filed on December 31, 2002, which was more than ninety days after January 15, 1999. Madrid does not contest Defendant's assertion that his individual claim is time-barred. Accordingly, judicial review of Madrid individual charge of discrimination is barred.

### C. Whether Plaintiffs' exhausted administrative remedies with respect to the class action charge submitted to the agency on October 24, 1996.

Federal employees who believe they have been discriminated against on the basis of race "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Pursuant to the "single-filing rule," so long as at least one named plaintiff in a Title VII class action timely filed an administrative charge, all other named plaintiffs and class members have satisfied the precondition of filing an administrative charge. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1110 (10th Cir. 2001); *Great Rivers Co-op. v. Farmland Indus.*, 120 F.3d 893, 899 (8th Cir. 1997). However, if none of the named plaintiffs filed a timely administrative charge, the class action case is barred for failure to exhaust administrative remedies. *See City of Hialeah v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002).

In Title VII cases, a claimant must file a charge of discrimination within the appropriate

limitations period as to each such discrete act of discrimination that occurred. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). A discrete discriminatory act, such as a failure to promote, "occurred" on the day that it "happened." *Morgan*, 536 U.S. at 110; *see also Davidson v. America Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003). A claimant must file a charge of discrimination within the appropriate limitations period as to each such discrete act of discrimination that occurred. *Morgan*, 536 U.S. at 110. This rule holds true even if the discrete act was part of a company-wide or systemic policy. *Davidson*, 337 F.3d at 1184.

Plaintiffs have failed to identify a discriminatory act that occurred within forty-five days before October 24, 1996, the date that they submitted their class action charge. Instead, Plaintiffs assert that the triggering event was Madrid's receipt of the OCI report on September 17, 1996. Madrid claims that once he read through the report and spoke with other Hispanic employees at WSMR, he became aware that he and other Hispanics had been discriminated against in promotions, appraisals, monetary awards, and quality step increases. (Def. Ex. 16.) Plaintiffs argue that Madrid had an "epiphany of widespread discrimination upon reading the OCI transcript and speaking to other Hispanics." (Pls. Resp. at 5.) The question is whether this realization triggered the time period.

In *Morgan*, the Supreme Court recognized that "[t]here may be circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered." *Morgan,* 536 U.S. at 114 n.7. The Tenth Circuit has held that the time period begins to run on the date an employee is notified of an adverse employment decision by the employer, and not when subsequent events reveal discriminatory ramifications of an earlier action. *Davidson*, 337 F.3d at 1184; *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1235 (10th

Cir. 1999); *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994).

*Hulsey* is instructive. In that case, the plaintiffs were demoted and transferred. *Hulsey*, 43 F.3d at 556. Over two years later, the plaintiffs watched a television program that indicated that their demotions were motivated by age discrimination. *Id*. The plaintiffs filed suit the same month that they viewed the program and argued that their cause of action did not accrue until the time that they saw the television program. *Id*. The Tenth Circuit rejected the plaintiffs' argument, observing that "[g]enerally, an employee is notified of an adverse employment decision when a particular event or decision is announced by the employer." *Hulsey*, 43 F.3d at 557.

Similar to the plaintiffs in *Hulsey*, Madrid alleges that he learned of the alleged discriminatory effect of prior employment actions at a significantly later date. Madrid's September 17, 1996 realization of purported national origin discrimination was insufficient as a matter of law to trigger the forty-five day time period. *Davidson*, 337 F.3d at 1184; *Hulsey*, 43 F.3d at 557; *Bennett*, 189 F.3d at 1235. Madrid based his individual claim on events that occurred in January 1996, and acknowledged that he had not applied for a permanent promotion since his 1987 promotion to GS-12. (Def. Ex. 21.) Defendant has submitted evidence establishing that Plaintiffs were not subjected to, or notified of, an adverse employment action during the relevant period. Plaintiffs have submitted no evidence to the contrary. Defendants are entitled to summary judgment because Plaintiffs failed to timely exhaust administrative remedies.[3]

**D.   Whether Rivas and Loya exhausted administrative remedies with respect to their individual claims with the class action charge submitted on October 24,**

---

[3] The forty-five day deadline is construed as a statute of limitations subject to waiver, estoppel and equitable tolling. *See Morgan*, 536 U.S at 113; *Albert v. Henderson*, 216 F.Supp.2d 1171, 1174 (D. Colo. 2002); 29 C.F.R. § 1614.105(a)(2). However, Plaintiffs do not contend, and the record does not indicate, that these theories would apply.

**1996.**

Rivas stated in the class action charge that she had been a GS-11 for ten years and that because of her "EEO complaint," she had been denied a promotion. (Def. Ex. 10.) Loya asserted that she was placed in a permanent GS-11 position in October 1994, but that other employees had been promoted. (*Id.*) Defendant has submitted evidence that Rivas filed a district court complaint in 1995 and that Loya filed a union grievance in 1994. (Def. Exs. 34 and 35.)

These events occurred more than forty-five days before October 24, 1996, the date that the class action administrative charge was filed. *See* 29 C.F.R. § 1614.105(a)(1). The class action charge operated to exhaust any discriminatory acts that happened within the forty-five day period preceding October 24, 1996. *Id.* However, a discriminatory act that happened prior to September 1996 would not have been exhausted by the October 24, 1996 class action charge, absent waiver, estoppel or equitable tolling. *See* 29 C.F.R. § 1614.105(a)(2). Because their alleged discriminatory acts happened before September 1996, and they have made no argument or showing relevant to waiver, estoppel or equitable tolling, Rivas and Loya failed to exhaust their individual claims through the class action charge. *See* 29 C.F.R. § 1614.105(a)(1).

Rivas and Loya assert that the EEO counselor failed to interview them to determine whether they had been denied promotions, received low performance appraisals or were denied cash awards during the relevant period. Plaintiffs have the burden of showing, by competent evidence, that they exhausted administrative remedies. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002). Plaintiff Loya stated in her affidavits that she actively sought employment and promotions at WSMR. (Loya Decl.) However, some of her applications were submitted to other agencies and all were submitted after August 1997. (*Id.*) The October 24, 1996 class action charge

did not exhaust administrative remedies as to Defendant's employment actions on Loya's subsequent applications. *Morgan*, 536 U.S at 110-13

### E. Whether Plaintiffs' class action claims are barred by res judicata.

Res judicata precludes a party from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits. *King v. Union Oil Co.*, 117 F.3d 443, 445 (10th Cir.1997). In order to support dismissal on res judicata grounds, defendant must satisfy four elements: "(1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit. *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997).

Plaintiffs point out that the class action suit is not based on the same causes of action as their individual claims. Because the current suit is not based on the same cause of action as the individual claims, res judicata is inapplicable.

### F. Whether Plaintiffs exhausted administrative remedies concerning use of the Resumix system with the October 24, 1996 class action charge.

Plaintiffs submitted their class action charge in October 1996. (Def. Ex. 10.) The class action charge does not mention the Resumix system. (*Id.*) Indeed, Plaintiffs admit that Defendant only started using the Resumix system in 2000. (Pl. Resp. Br. at 14.) Under *Morgan*, each discrete incident of purportedly discriminatory treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted. *Morgan*, 536 U.S at 110-13; *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003). Because the Resumix system was not in use at WSMR at the time Plaintiffs filed their class action charge, Plaintiffs did not exhaust administrative remedies

with respect to the Resumix system through the class action charge.

### IV. Conclusion

Defendant's motion, construed as a motion for summary judgment, should be granted because Plaintiffs failed to timely exhaust administrative remedies.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 14), filed May 9, 2003, is **GRANTED**.

**A JUDGMENT CONSISTENT WITH THIS MEMORANDUM OPINION AND ORDER SHALL ISSUE FORTHWITH.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**